# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **JEREMY R. DURHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **LARRY MARTIN, as Commissioner of** ) | Case No. 3:17-cv-01172 |
| **Finance and Administration of the State** ) | Judge Aleta A. Trauger |
| **of Tennessee, in his official capacity;** ) | |
| **CONNIE RIDLEY, as Director of** ) | |
| **Legislative Administration for the State** ) | |
| **of Tennessee, in her official capacity;** ) | |
| **and DAVID H. LILLARD, JR., as** ) | |
| **Treasurer of the State of Tennessee,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Plaintiff Jeremy R. Durham has filed suit against defendants Larry Martin, Tennessee Commissioner of Finance and Administration; Connie Ridley, Tennessee Director of Legislative Administration; and David H. Lillard, Jr., Tennessee State Treasurer, in their official capacities. The plaintiff asserts a claim under 42 U.S.C. § 1983 for violation of his right to procedural due process, and he seeks declaratory and injunctive relief. (Compl., Doc. No. 1.) Now before the court is the defendants' Motion to Dismiss. (Doc. No. 8.) The motion has been fully briefed by both parties and is ripe for review. For the reasons set forth herein, the motion will be granted, and this case will be dismissed.

I.  **Factual Allegations**

Plaintiff Jeremy Durham was elected to the Tennessee House of Representatives in November 2012 and again in November 2014, where he served until his expulsion on

September 13, 2016. This lawsuit stems from that event, although it does not purport to challenge it directly.

On September 2, 2016, Tennessee Governor Bill Haslam issued a proclamation to convene the Tennessee General Assembly for a special session. As set forth in the proclamation, the purpose of the special session was to "[c]onsider[] and act[] upon legislation necessary to ensure that Tennessee law prohibiting an individual under the age of 21 from operating a motor vehicle while intoxicated or under the influence of alcohol maintains compliance with 23 U.S.C. § 161" (Proclamation, Doc. No. 1-2), in order to avoid losing up to $60 million in federal highway funds. The other purposes of the special session identified by the proclamation were to "[c]onsider[] and act[] upon legislation to address any other instances of noncompliance . . . with federal [law] relating to federal-aid highway funding," make appropriations necessary to provide first-year funding for any such legislation, and make appropriations to pay for the special legislative session. (*Id.*)

The special legislative session was authorized by Article III, Section 9 of the Tennessee Constitution. (*Id.*) That provision specifically empowers the governor, "on extraordinary occasions, [to] convene the General Assembly by proclamation, in which he shall state specifically the purposes for which they are to convene." Tenn. Const. art. III, § 9. On such occasions, the General Assembly "shall enter on no legislative business except that for which they were specifically called together." *Id.*

On September 13, 2016, the second day of the special session, Representative Susan Lynn (R – Mt. Juliet) introduced a motion in the House of Representatives to expel Durham. The Tennessee House of Representatives eventually voted on the motion and approved it by a margin of seventy votes in favor of expulsion to two against. Durham was immediately

expelled from the House of Representatives.

The House's authority to expel Durham arose from a different provision of the Tennessee Constitution, which states in relevant part that "[e]ach House may . . . , with the concurrence of two-thirds, expel a member." Tenn. Const. art. II, § 12. Durham nonetheless maintains that the House of Representatives had no authority under the Tennessee Constitution to expel him during the special session, because the General Assembly's authority under Article III, Section 9 of the Tennessee Constitution is limited to the consideration of those matters of "legislative business" specifically identified in the proclamation calling for the special session. His expulsion was not a matter identified in the Governor's proclamation.

Shortly after his expulsion from the legislature, Durham inquired about the status of his health insurance coverage. He was informed that, as a result of the vote to expel him on September 13, his insurance coverage as an active state employee would terminate on September 30, 2016, after which date he would be eligible for COBRA coverage. An email attached to the Complaint, from Angie Gargara, Benefits Administration, to Tammy Rather, which the plaintiff claims was forwarded to him, states:

> The question of whether former Representative Durham is entitled to lifetime coverage as a retiree was decided by Commissioner Martin after consultation with the Attorney General's office. It is the Department's decision that expulsion from the General Assembly does not constitute "retirement" that the law requires for lifetime coverage, so Representative Durham is not entitled to that benefit. The Attorney General interpreted "retirement" to exclude expulsion in Attorney General Opinion 80-147.

(Doc. No. 1-3, at 1.)

The plaintiff claims that his unlawful expulsion from the House of Representatives resulted in the loss of his right to lifetime health insurance coverage as well as the loss of a

state pension to which he would have otherwise been entitled.

The Complaint alleges that the defendants "are public officials of the State of Tennessee," each of whom "either oversees, administers, or regulates state insurance and benefit plans in some capacity." (Compl. ¶ 5.) Defendant Larry Martin, Commissioner of Finance and Administration for the State of Tennessee, is "responsible for administering state benefit plans for elected members of state government." (Compl. ¶ 12.) Defendant Connie Ridley, Director of Legislative Administration for the State of Tennessee, is "responsible for all administrative matters and member benefits for the Tennessee General Assembly." (Comp. ¶ 13.) Defendant David H. Lillard, Jr., Treasurer for the State of Tennessee, "overseas the daily operation of the State retirement system." (Compl. ¶ 14.)

To be clear, the plaintiff does not actually challenge the constitutionality of the state statutes and regulations that govern his claims to health and retirement benefits or the correctness of the state officials' interpretation of state benefits law. Rather, he simply contends that his expulsion from the legislature violated the Tennessee Constitution and, as a result, violated his "protected property interest in his state benefits, specifically his pension and insurance benefits." (Compl. ¶ 3.) Durham claims that, "[b]ased on the plain language of Article III, Section 9 of the Tennessee Constitution and prior failed attempts to call a special session for the specific purpose of expelling him, [he] had the reasonable understanding that he would retain his state benefits (lifetime health insurance and a state pension) at the end of his term." (Compl. ¶ 28.) He also asserts that he was "afforded no post-deprivation remedy to challenge his expulsion or deprivation of his state benefits." (Compl. ¶ 29.) Consequently, he claims that he was been deprived of his constitutional right to due process, in violation of 42 U.S.C. § 1983.

## II. The Defendants' Motion

The defendants' motion seeks dismissal of the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and, alternatively, under Rule 12(b)(6), for failure to state a claim for which relief may be granted. They argue in support of the motion that (1) the plaintiff lacks standing, both because he fails to identify an injury in fact caused by the defendants and because he fails to identify a violation of the laws or Constitution of the United States; (2) even if he has standing, he lacks a protected property interest in either his elected office or in receiving lifetime state benefits, for purposes of asserting a due process claim under § 1983; and (3) even if he had a protected property interest, he was afforded all the process that was due. In the alternative, the defendants argue that, if the court finds that dismissal is not warranted on any of the above grounds, the court should abstain or dismiss the Complaint under the *Pullman* abstention doctrine or certify the state constitutional question raised by the Complaint—that is, whether Durham's expulsion violated the state Constitution—to the Tennessee Supreme Court. The plaintiff filed a Response opposing each of these arguments. (Doc. No. 12.) The defendants filed a Reply. (Doc. No. 16.)

As set forth below, the court finds that the plaintiff fails to establish standing, because he does not draw the requisite causal connection between his injuries and any action by the defendants named in this case, as a result of which the court lacks subject matter jurisdiction and must dismiss the Complaint. The court declines to reach the defendants' alternative arguments.

## III. Legal Standard: Rule 12(b)(1)

A court's subject matter jurisdiction is a "threshold determination" that may be

challenged by motion under Rule 12(b)(1). *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). The instant motion is a facial challenge to the court's subject matter jurisdiction, so the court will treat the allegations in the Complaint as true. *See, e.g.*, *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) ("A facial attack is a challenge to the sufficiency of the pleading itself.").

**IV.    Discussion**

In order to establish subject matter jurisdiction, the plaintiff must show, among other things, that he has standing to litigate a particular claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Standing is a "threshold determinant[] of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

The elements of standing are threefold—the plaintiff must establish (1) injury in fact, (2) causation, and (3) redressability. *Steele Co.*, 523 U.S. at 103. The injury-in-fact component requires the plaintiff to "allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal citations omitted). The causation element requires the plaintiff to establish a "causal

connection between the injury and the conduct complained of"—that is, the plaintiff must show that the alleged injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original; citation omitted). The redressability requirement means the plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

The defendants here argue that the facts as alleged by the plaintiff show neither an injury in fact nor causation, because the alleged injuries are traceable only to the actions of the Tennessee House of Representatives, rather than to those of the defendants. The plaintiff retorts that he "suffered an actual injury when he lost his benefits without due process." (Doc. No. 12, at 1.) He also argues that he lost his benefits through the defendants' actions, because the defendants are charged with "oversee[ing], administer[ing], or regulat[ing] state insurance and benefits plans." (Doc. No. 12, at 3.) Although the plaintiff concedes that the "basis" for the defendants' actions was "an illegal act by the Tennessee legislature," he argues that it was the defendants, rather than the state legislature, who actually "enforced the denial of benefits based on [the] unauthorized and unconstitutional expulsion." (Doc. No. 12, at 3.)

In their Reply, the defendants insist that the plaintiff's "real complaint" is that the Tennessee House of Representatives denied him due process (Doc. No. 16, at 2), as illustrated by his repeated assertions that the expulsion vote itself violated the Tennessee Constitution and "deprived Mr. Durham of any meaningful notice or opportunity to be heard." (*See, e.g.*, Doc. No. 12, at 11 ("The violation of [the plaintiff's] procedural due

process rights [by the Tennessee legislature] led to Defendants' deprivation of Mr. Durham's protected property interests in his benefits and pension.").)

### A. Injury in Fact

The court finds, first, that the plaintiff at least arguably suffered an actual injury that is neither conjectural nor hypothetical: he was expelled from the Tennessee House of Representatives, allegedly in violation of the Tennessee Constitution, and, as a result, he suffered a loss of certain benefits attendant upon his status as a state legislator, including lifetime health insurance coverage and, if he met certain qualifications, a retirement pension.

### B. Causation

The next standing question implicated by his suit is whether the plaintiff has alleged a causal connection between the defendants' actions and the injuries he has identified. He has not.

#### 1. *Retirement Benefit*

Durham was initially elected to the House of Representatives on November 6, 2012. *See* https://sos.tn.gov/products/elections/election-results#2012. He became a member of the General Assembly and a state employee on election day. *Comer v. Ashe*, 514 S.W.2d 730, 733 (Tenn. 1974) (citing Tenn. Const. art. II, § 3). He was re-elected on November 4, 2014, https://sos.tn.gov/products/elections/election-results#2014, but he was expelled from the Legislature on September 13, 2016, approximately eight weeks before the fourth anniversary of his employment.

Tennessee law provides state employees a retirement benefit under the Tennessee Consolidated Retirement System ("TCRS"). To obtain the retirement benefit, an employee must comply with the prescribed procedure for applying for it, but he also must meet certain

eligibility requirements. (Doc. No. 9, at 14–15.) As relevant here, the plaintiff does not allege that he ever made any attempt to apply for retirement benefits under the prescribed procedure or otherwise. Moreover, the defendants explain that the plaintiff, as a former member of the Tennessee General Assembly, would not have become eligible for the retirement benefit unless and until he achieved a minimum of four years of creditable service. (Doc. No. 9, at 15.) The plaintiff does not contest that assertion. (*See, e.g.*, Doc. No. 12, at 1 ("Plaintiff Jeremy Durham was entitled to receive his vested retirement . . . benefits after four years of service as a state representative.").)[1] And, although the plaintiff claims that his "entitlement to . . . retirement benefits had already vested" (Doc. No. 12, at 10), he also concedes that he was expelled from the General Assembly prior to the expiration of his second two-year term and, thus, prior to reaching four years of service.

In other words, it is undisputed, for purposes of the defendants' motion, that (1) the plaintiff did not serve four years as a member of the Tennessee House of Representatives, and (2) he was required to serve at least four years in order to be entitled to a retirement

---

[1] The statutes cited by the defendants do not actually support this assertion. In particular, Tenn. Code Ann. § 8-36-204(a) indeed states that, "[n]otwithstanding . . . any other law to the contrary," any state employee classified as a Group 1 employee, which the plaintiff apparently was, "shall not be eligible for a service or early service retirement allowance unless such member has a minimum of four (4) years of creditable service." This subsection, however, only applies to members of the state retirement system classified "prior to July 1, 1979." *Id.* Other subsections of the same code section provide that individuals who become members of the state retirement system on or after July 1, 1979, must have a total of ten years of creditable service to qualify for retirement benefits, "[i]n addition to all other requirements for service or early service retirement," and those who become Group 1 members on or after January 1, 1992, must have a total of five years of creditable service. Tenn. Code Ann. § 8-34-204(b)(1) & (2). However, the statute also states that "[t]his provision shall not apply to members of the general assembly." Tenn. Code Ann. § 8-36-204(c). Nonetheless, based on the parties' apparent agreement on this topic, the court presumes for purposes of the defendants' motion that the plaintiff was required to serve a minimum of four years as a member of the General Assembly to become eligible for retirement benefits.

benefit. Because he was not a state employee for the minimum four-year period, his interest in the state retirement system did not vest, and he did not become eligible to receive a state pension. No action by any defendant caused that result—it followed directly and inexorably from the plaintiff's expulsion from the House of Representatives. That is, the *sole* basis for the plaintiff's claim that he was deprived of his right to retirement benefits is that he was wrongfully expelled from the House of Representatives by the allegedly illegal, *ultra vires* vote by that body during the September 2016 special session, not by any illegal action by the named defendants.

Accordingly, the court finds that the plaintiff fails to show a causal connection between his loss of any entitlement to a state retirement pension and any action or inaction by the named defendants.

### 2. *Lifetime Health Insurance*

The plaintiff alleges that he inquired about his health insurance coverage and was informed that defendant Martin had "decided Plaintiff's coverage would end on September 30, 2016." (Compl. ¶ 25 & Ex. B.) Under state law, the plaintiff would have been entitled to elect to retain retiree health benefits for life upon "retirement" from the legislature. *See* Tenn. Code Ann. § 8-27-208(a)(1) ("Upon retirement from the general assembly, any . . . representative . . . may elect to retain retiree health benefits by participating in the plan authorized by the state insurance committee . . . ."). Durham, however, did not "retire" from his position, and he does not argue otherwise.[2]

---

[2] Retirement is ordinarily defined as "withdrawal from one's position or occupation or from active working life." *See* https://www.merriam-webster.com/dictionary/retirement. The term "retirement" thus signifies a voluntary withdrawal from office. Conversely, "expel" is defined as "to force to leave . . . by official action" and to "take away rights or privileges of membership." *See* https://www.merriam-webster.com/dictionary/expel. An expulsion, unlike retirement, is not voluntary. *Accord Jacobs v. N.J. State Highway Auth.*, 255 A.2d 266, 268

The plaintiff does not allege that the Tennessee law providing lifetime health insurance to former legislators only upon "retirement" from the state legislature is itself unconstitutional. Nor does he actually contend that the application of these state laws to his situation—that of an expelled lawmaker—was unconstitutional. Instead, the plaintiff complains that his expulsion from the House of Representatives was itself unlawful—that it violated the state Constitution and, therefore, his federal right to due process. In other words, his position appears to be that he would not have had a basis for complaining about the loss of the health insurance benefit if he had been *lawfully* expelled, either during a regular legislative session or during a special session called for that purpose. Once again, the act that he is complaining about is his purportedly unlawful expulsion.

The Complaint itself clearly reflects the plaintiff's understanding that the wrongs visited upon him resulted from his wrongful expulsion from the state legislature:

> 2. Plaintiff's expulsion took place during a special session constitutionally designated and limited by Article III, Section 9 of the Tennessee Constitution to address federal highway funds. The House had no authority under the Tennessee Constitution or state law to expel Plaintiff at this special session (as opposed to a regular legislative session).
>
> 3. This violation of Article III, Section 9 of the Tennessee Constitution, which limits special sessions to the specific purposes for which they are convened, resulted in the deprivation of Plaintiff's protected property interest in his state benefits, specifically his pension and insurance benefits.
>
> . . . .
>
> 9. *As the direct and proximate result of his improper and unauthorized expulsion*, Plaintiff has lost his lifetime health insurance benefits and has been so informed by the State's Benefits Administration Division.

---

(N.J. 1969) (holding that "retirement" "ordinarily signifies voluntary withdrawal," as opposed to "discharge," which signifies "compulsory dismissal"); *Morrison v. Dep't of Highways*, 85 So. 2d 51, 53 (La. 1955) ("Retirement is not dealt with in the amendment, unless by mental gymnastics we could come to construe that 'removal' means 'retirement.' These words are not synonymous.").

> 10. Defendants' enforcement of this denial of Plaintiff's state benefits *is based on an unauthorized,* ultra vires *expulsion that violated Article III, Section 9 of the Tennessee Constitution . . . .*

(Compl. ¶¶ 2–3, 9–10 (emphasis added).)

In sum, the plaintiff's assertions to the contrary notwithstanding, his loss of the health insurance benefit is not fairly traceable the defendants' actions. It is, instead, the "direct and proximate result" (Compl. ¶ 9) of "the independent action of some third party not before the court," *Lujan*, 504 U.S. at 560—namely, the legislative body that expelled him. The defendants, who took no part in that event, simply acted upon the facts presented to them: the plaintiff had been expelled from the General Assembly and was thereby rendered ineligible for lifetime health insurance. The plaintiff does not contend that he actually retired from the state legislature, as required by the statute to render him eligible for the lifetime insurance benefit. Thus, the action the plaintiff actually contests is his expulsion from the state legislature, on the basis that it altered his legal status as a state employee and, thus, his eligibility, as a matter of state law, for the benefit to which he claims an entitlement.

Suing the named defendants in this case amounts to an attempt to make an end-run around a challenge to the expulsion itself. Because the plaintiff cannot establish a causal connection between his alleged injuries and any action by the defendants, he lacks standing, and, consequently, this action must be dismissed for lack of subject matter jurisdiction.[3]

---

[3] The doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), bears mentioning here, if only to explain why it does not afford relief in this case. The *Ex parte Young* exception to sovereign immunity generally permits federal courts to enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citations omitted). Here, however, the plaintiff does not allege that the state statutes and regulations the named defendants are tasked with enforcing are unconstitutional or even that the defendants' interpretation or application of state law is incorrect or unconstitutional. Nor does he challenge the process available for redressing a wrongful denial of state benefits. He does not claim that the defendants themselves acted *ultra vires* or outside the scope of their authority. Instead, he

## V. Conclusion

As set forth herein, the court will grant the defendants' motion and dismiss this case with prejudice. An appropriate Order is filed herewith.

ENTER this 8th day of December 2017.

_____
ALETA A. TRAUGER
United States District Judge

---

challenges the constitutionality of his expulsion from the General Assembly, and the only relief that would achieve the plaintiff's objectives would be to somehow nullify that expulsion.

But the named defendants themselves are not tasked with enforcing the allegedly illegal expulsion; instead, they are simply called upon to administer state law pertaining to the benefits afforded state employees and legislators. *Ex parte Young* does not extend to this situation. *See, e.g.*, *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("Courts have not read *Young* expansively."); *Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 459 n.9 (6th Cir. 1982) (recognizing that "an action against a state official must be 'based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional' in order to avoid the bar of the Eleventh Amendment" (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689–90 (1982))).

Although *Ex parte Young* is generally invoked as grounds for either dismissing, or avoiding dismissal of, a case on the basis of sovereign immunity, in this context the doctrine illuminates the central fault in the plaintiff's theory of relief: because the named defendants are not alleged to have violated any law, *Ex parte Young* does not afford the plaintiff an avenue of relief.